UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| AUSTIN BASCOM, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KENNECOTT UTAH COPPER LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [ECF NO. 31] DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>Case No. 2:25-cv-00505-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendant Kennecott Utah Copper LLC's Motion for Reconsideration,[1] Plaintiff Austin Bascom's response brief,[2] and Defendant's reply.[3] Plaintiff is an employee of Defendant. Plaintiff brings a collective action, alleging that Defendant failed to pay all the overtime wages owed to him and other similarly situated employees under the Fair Labor Standards Act ("FLSA"). Defendant seeks reconsideration of the court's previous order denying its motion to dismiss.[4] Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[5]

---

[1] Mot. for Reconsideration ("MFR"), ECF No. 31, filed December 5, 2025.
[2] Bascom's Resp. in Opp'n to Mot. for Reconsideration ("Opp."), ECF No. 33, filed December 19, 2025.
[3] Reply in Supp. of Def.'s Mot. for Reconsideration ("Reply"), ECF No. 34, filed January 2, 2026.
[4] *See* Memo. Decision and Order Denying Def.'s Mot. to Dismiss ("Order"), ECF No. 28, filed November 19, 2025.
[5] *See* DUCivR 7-1(g).

1

# BACKGROUND

## I. Factual Background

As the relevant facts are unchanged, the court restates the background from its earlier order:

> Mr. Bascom brings this collective action on behalf of himself and other Kennecott employees "who were paid a bonus and/or shift differential that was not included in their regular rate of pay." Kennecott has employed Mr. Bascom as a haulage operator since 2021. Mr. Bascom and the other similarly situated Kennecott employees frequently work more than 40 hours a week.
>
> Kennecott pays Mr. Bascom and the other employees an hourly wage and other non-discretionary bonuses, such as production and safety bonuses and shift differentials. Kennecott pays the employees overtime at 1.5 times their hourly wage, but Kennecott does not include the non-discretionary bonuses in their calculations for overtime purposes. The terms of Mr. Bascom's and the other similarly situated employee's pay are set by a collective bargaining agreement ("CBA") between Kennecott and a union.
>
> On June 24, 2025, Mr. Bascom sued Kennecott for failing to pay overtime as required under the FLSA. Mr. Bascom alleges that the FLSA requires Kennecott to include the non-discretionary bonuses as part of the employee's regular rates of pay for overtime purposes. The Complaint makes no mention of the CBA, and Mr. Bascom does not claim that he is not receiving the correct amount of pay under the CBA.[6]

## II. Procedural Background

On August 7, 2025, Defendant filed its Motion to Dismiss.[7] Defendant argued that: (1) the National Labor Relations Act ("NLRA") preempted Plaintiff's claim under *Garmon* preemption; and (2) Section 301 of the Labor-Management Relations Act ("LMRA") also preempted Plaintiff's claim.[8] On November 19, 2025, the court entered an order rejecting both of

---

[6] Order 2–3.
[7] Mot. to Dismiss, ECF No. 19, filed August 7, 2025.
[8] Order 1.

2

Defendant's arguments and denying the motion to dismiss (the "opinion").[9] On December 5, 2025, Defendant filed the Motion for Reconsideration at issue here.[10]

## STANDARD

The Federal Rules of Civil Procedure "do not recognize a motion to reconsider."[11] However, under Rule 54(b), any decision adjudicating fewer than all claims "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[12] "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."[13] "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[14] However, such motions "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."[15]

## DISCUSSION

Defendant argues that the opinion contains five "inconsistencies and misinterpretations of the facts and controlling law, which warrant reconsideration of Defendant's MTD."[16] First, Defendant argues that the opinion acknowledged there was an arguable NLRA violation but then did not apply *Garmon* preemption. Second, Defendant argues that the opinion's citation to *Chavez v. Albuquerque* is mistaken. Third, Defendant argues that the opinion's analysis of *Epic*

---

[9] Order.
[10] MFR.
[11] *Ysais v. Richardson*, 603 F.3d 1175, 1178 n.2 (10th Cir. 2010).
[12] Fed. R. Civ. P. 54(b).
[13] *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007).
[14] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).
[15] *Id.*
[16] MFR 3.

3

*Systems Corp. v. Lewis* is inaccurate. Fourth, Defendant argues that the opinion's reliance on *Barrentine v. Ark.-Best Freight system* is misplaced because the reasoning is inapplicable or was later rejected. Fifth, Defendant argues that the opinion's determination that "Plaintiff's claim depends on what was actually paid to him, not what was owed to him under the CBA"[17] is a distinction without a difference. The court considers each of Defendant's arguments in turn.

### I.  Arguable NLRA Violation

Defendant first argues that the court acknowledges there was an arguable NLRA violation and thus should have applied *Garmon* preemption. But Defendant's argument misconstrues the opinion's language.

The court explained the basis for *Garmon* preemption in its previous opinion:

> Congress enacted the NLRA to "encourag[e] the practice and procedure of collective bargaining and[] protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." "The Supreme Court has considered it essential to the administration of the NLRA that determinations regarding the scope and effect of §§ 7 and 8 'be left in the first instance to the National Labor Relations Board.'" Thus, under *Garmon* preemption, "both state and federal courts generally lack original jurisdiction to determine disputes involving conduct actually or arguably prohibited or protected by the NLRA." Section 7 of the NLRA grants employees the right to organize and collectively bargain. Section 8 prohibits unfair labor practices by the employer or the labor organization, such as refusing to bargain collectively or unilaterally terminating or modifying the CBA.[18]

---

[17] Order 11.

[18] *Id.* 4–5 (first quoting 29 U.S.C. § 151; then quoting *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. v. Bechtel Power Corp.*, 834 F.2d 884, 886 (10th Cir. 1988) (quoting *Garmon,* 359 U.S. at 244–45); then quoting *Bechtel Power Corp.*, 834 F.2d at 886 (citing *Garmon*, 359 U.S. at 244–45); then citing 29 U.S.C. § 157; and then citing 29 U.S.C. § 158).

After explaining *Garmon* preemption, the opinion analyzes whether Plaintiff's FLSA claims "arguably fall within the prohibitions of Section 7 or 8 of the NLRA."[19] The court concluded that they did not because "FLSA rights are *individual* and not related to the collective bargaining rights under Section 7 or 8 of the NLRA."[20] The opinion explicitly states "[a]s a general matter, Plaintiff's claims do not arguably fall within the prohibitions of Section 7 or 8 of the NLRA."[21]

After that analysis, the opinion addresses Defendant's argument "that a ruling in Plaintiff's favor would require it to pay opt-in employees a higher overtime rate than others covered by the same CBA—creating unequal pay that, Defendant argues, would constitute an unfair labor practice under the NLRA and trigger *Garmon* preemption."[22] As one point, among others, in rejecting that argument, the opinion states:

> And in any case, the arguable NLRA violation is, at this point, wholly hypothetical. This court has not yet ruled on the validity of Plaintiff's FLSA claim, nor determined the proper remedy. Nor would any NLRA claim be a part of this case but would instead be brought in a separate action with different plaintiffs. If that second hypothetical case materializes, Kennecott would be free to argue that it should go before the NLRB.[23]

Defendant now argues that the first sentence of that paragraph acknowledges the existence of an arguable NLRA violation. It does not. The language in the foregoing paragraph is an explanation of why *Defendant's* argument—not the court's position—that there is an arguable NLRA violation is speculative. Unequal pay is not—and will not become—an issue in this case.

---

[19] *Id.* 5.
[20] *Id.* (Further concluding that "ultimately, the FLSA assigns the judiciary as the place to address the FLSA's overtime requirements, not the NLRB.").
[21] *Id.*
[22] *Id.* 7.
[23] *Id.* 8.

This case is about an alleged FLSA violation, which the opinion earlier concluded is "not related to the collective bargaining rights under Section 7 or 8 of the NLRA." In other words, the court has found both that "Plaintiff's claims do not arguably fall within the prohibitions of Section 7 or 8 of the NLRA" and that Defendant's urging that the court find an arguable violation is based on "wholly hypothetical" future events. Defendant's argument that the court has found an arguable violation is simply wrong.

## II.     *Chavez*

Defendant next argues that the court's reliance on *Chavez* is mistaken. The opinion stated:

> Neither has the Tenth Circuit even discussed the possibility of *Garmon* preemption in FLSA cases similar to this one. In *Chavez v. Albuquerque*, the Tenth Circuit considered an FLSA collective action brought by city employees. All of the city employees were members of a union that had entered into a collective bargaining agreement. There, "the City calculate[d] an employee's wage entitlements under the FLSA and under the applicable CBA, and then pa[id] the employee the greater of the two." But instead of finding that created a *Garmon* preemption issue, the Circuit held that "[t]here is nothing inherently wrong with the City's approach of calculating wage entitlements under the FLSA and under the applicable CBA, and then paying the greater of the two."[24]

The court acknowledges its error. As Defendant correctly points out, the NLRA does not apply to public employers.[25] Thus, since *Chavez* involved city employees, neither the NLRA nor *Garmon* preemption could have applied—and *Chavez* would have had no occasion to address *Garmon* preemption.

---

[24] *Id.* 9 (citing *Chavez v. Albuquerque*, 630 F.3d 1300, 1304–05 (10th Cir. 2011)). The court also cites *Chavez* elsewhere in the opinion for the general proposition that "[t]he regular rate may include more than just an employee's contractually-designated hourly wage if the employee is, *in fact*, paid more than that hourly wage." Order 7 (citing *Chavez*, 630 F.3d at 1305). That general proposition pertains to FLSA law and is unaffected by Defendant's argument that *Garmon* preemption could not have applied.
[25] 29 U.S.C. § 152.

6

That said, the analysis of *Chavez* was a minor point in rejecting Defendant's arguments. It occupied a single paragraph at the end of the *Garmon* analysis.[26] The *Chavez* discussion did not affect any of the authority and reasoning that preceded it. As a result, it does not change the outcome of the motion.

## III.   *Epic Systems*

Defendant next argues that the opinion's analysis of *Epic Systems* is incorrect because "*Epic Systems* did not involve preemption under either *Garmon* or the LMRA."[27] True enough. But the opinion never claims that *Epic Systems* is about *Garmon* or LMRA preemption—instead the opinion analogizes the Supreme Court's reasoning in *Epic Systems* to the issue before it. The opinion states:

> The Supreme Court also rejected a similar attempt to create conflicts between the NLRA and the FLSA. In *Epic Systems Corp. v. Lewis,* employees tried to create conflict between the NLRA, the FLSA, and the Arbitration Act in order to avoid individual arbitration contractual clauses that control FLSA claims. There, the employees tried "suggesting that one statute (the NLRA) steps in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of yet a third statute (the Arbitration Act)." Justice Gorsuch explained that this theory was "a sort of interpretive triple bank shot, and just stating the theory is enough to raise a judicial eyebrow." Similarly here, Defendant suggests that one statute (the NLRA) steps in to dictate the procedure for claims under a different statute (the FLSA) when the first statute might be implicated by a not-yet-granted remedy under the second statute. It presents an interpretive double bank shot aimed at where the hoop might be in the future.[28]

It is appropriate to draw analogies from reasoning in cases that address related questions. That is what the opinion did here. *Epic Systems* illuminates because it is another case in which some of

---

[26] See Order 4–9.
[27] MFR 4.
[28] Order 8–9 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 515–516 (2018)).

7

the parties urged the court to read conflicts into statutes. Defendant may disagree with the analysis, but it is not clear error or manifest injustice.

### IV.     *Barrentine*

Defendant next challenges the opinion's reliance on *Barrentine* on the grounds that it has been disfavored by later cases. In *Barrentine,* the Court considered "whether an employee may bring an action in federal district court, alleging a violation of the minimum wage provisions of the Fair Labor Standards Act, . . . after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to the provisions of his union's collective-bargaining agreement."[29] Where the CBA did not expressly reference arbitrating statutory claims, the Court held that previous arbitration over a wage claim did not preclude a FLSA claim in federal court in part because "FLSA rights . . . are independent of the collective-bargaining process."[30] The Court also expressed reservations about arbitration's fitness for enforcing statutory rights.[31]

After numerous courts interpreted *Barrentine* and similar decisions as prohibiting any arbitration of statutory rights, the Supreme Court considered the issue again in *14 Penn Plaza LLC v. Pyett*.[32] There, the Supreme Court explained that the *Gardner-Denver* line of cases, which includes *Barrentine*, only reached the issue of "whether arbitration of *contract-based* claims precluded subsequent judicial resolution of *statutory* claims."[33] And "[s]ince the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were

---

[29] *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 729–30 (1981).
[30] *Id.* at 731, n.5, 745.
[31] *Id.* at 742–43.
[32] *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 255 (2009).
[33] *Id.* at 264 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)) (emphasis added).

8

not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions."[34] The Court went on to hold that if a CBA's arbitration provision expressly covers statutory claims, it is enforceable.[35] The Court also recognized that "apart from their narrow holdings, [*Barrentine*] included broad dicta that w[as] highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights."[36] The Court went on to explain "[t]hat skepticism, however, rested on a misconceived view of arbitration that this Court has since abandoned."[37] But, crucially, the Court never criticized *Barrentine*'s interpretation of the FLSA, nor overturned the case.

Here, the court's opinion only relied on *Barrentine* for its interpretation of the FLSA.[38] The opinion did not rely on or quote any of *Barrentine*'s "broad dicta that w[as] highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights."[39] Nothing in *14 Penn Plaza* calls into doubt anything this court's opinion relied on from *Barrentine*. Courts continue to rely on *Barrentine*'s interpretation of the FLSA after *14 Penn Plaza* was issued.[40] There is no manifest injustice or clear error in doing so.

V.   **Actual Pay**

Lastly, Defendant contends that the opinion's LMRA analysis is inconsistent, arguing that the conclusion—that Plaintiff's claim turns on what he was actually paid rather than what he

---

[34] *Id.* (quoting *Gilmer*, 500 U.S. at 35).
[35] *Id.*
[36] *Id.* at 265.
[37] *Id.*
[38] Order 5, 10.
[39] *See* Order; *14 Penn Plaza LLC*, 556 U.S. at 265.
[40] *See, e.g., Moran v. John J. Picone, Inc.,* No. 24-cv-4095, 2025 WL 2783596, at *3 (E.D.N.Y. Sept. 30, 2025); *Isaacs v. Central Parking Sys. of N.Y., Inc.*, No. 10-cv-5636, 2012 WL 957494, at *3 (E.D.N.Y., Feb. 27, 2012); *Allen v. BHP Navajo Coal Co.*, No. cv 09-692, 2011 WL 13266816, at *3 (D.N.M. Mar. 30, 2011); *Bell v. Se. Pennsylvania Transp. Auth.*, 733 F.3d 490, 493–95 (3d Cir. 2013).

was owed under the CBA—draws a distinction without a difference. Defendant argues that "[e]very FLSA case must start with a determination of the regular rate of pay" and "Plaintiff's . . . regular rate of pay is defined *only* by the CBA."[41] But Defendant misunderstands both the law and the court's opinion.

First, plaintiff's regular rate of pay *is not* defined by the CBA. The basis for a plaintiff's pay could come from a CBA, an individual employment contract, or a handshake agreement—it doesn't matter. The Tenth Circuit has made it abundantly clear that "[c]ontractual stipulations as to the regular rate are not controlling, because the regular rate is an '*actual fact*,' rather than 'an arbitrary label chosen by the parties.'"[42] Here, as currently pled, it does not matter what the CBA says. It does matter what the FLSA says Plaintiff's regular rate is, based on how much Plaintiff *actually* worked and was *actually* paid for that work. Regular rate under the FLSA is an "actual fact" that does not, on its own, require interpreting the CBA.[43]

---

[41] MFR 6.
[42] *Chavez*, 630 F.3d at 1305 (quoting *Walling,* 325 U.S. at 424); *see also Bell*, 733 F.3d at 495.
[43] *Id.*; *Moran*, 2025 WL 2783596, at *5 (collecting cases); *see also Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 523–24 (S.D.N.Y. 2014) (holding no preemption where "plaintiffs do not allege that the CBAs were breached or that the plaintiffs are owed any outstanding nighttime differential pay under the terms of the CBAs" because "[t]here is therefore no dispute about the parties' rights under the CBAs"); *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 333–35 (S.D.N.Y. 2012) (holding no preclusion where there was no dispute that plaintiffs were entitled to night differential, defendant conceded he failed to add night differential to overtime calculation, and plain language of CBA on the night differential was clear); *Isaacs*, 2012 WL 957494, at *5 (holding no preclusion of FLSA and NYLL claims where the court would not need to determine plaintiff's non-overtime rate under relevant CBAs, plaintiff made no allegation his non-overtime rate was incorrect, and plaintiff explicitly did not allege a breach of the CBA or challenge any of its provision); *Allen*, 2011 WL 13266816, at *3 (holding no preemption where Plaintiff's "Complaint does not allege a violation of the CBA, but rather alleges violations of statutory right granted by the FLSA and state law."); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368, at *3 (D.N.J. Jan. 6, 2006) ("Plaintiffs' claims are not based on an interpretation of the collective bargaining agreement with respect to the appropriate wage rate, but are based on their contention that they are entitled to overtime. Plaintiffs are not barred by the LMRA from pursuing these claims under the FLSA merely because its contractual and statutory rights arise from the same factual occurrence."). *But see Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301 (E.D.N.Y. 2011) (holding an FLSA claim was preempted by Section 301 where the court first had to determine what the Plaintiff was owed under a CBA).

Second, Plaintiff does not claim the CBA has been breached or violated. If a Plaintiff makes allegations that require interpreting the CBA—namely, some failure to comply with the terms of the agreement—the LMRA's Section 301 bar would likely apply.[44] But "[w]here a plaintiff's FLSA . . . overtime claims do not require interpreting a collective bargaining agreement, courts have routinely found that those claims are not preempted or precluded by the LMRA."[45] Here, Bascom makes no allegations that Defendants are in violation of the CBA, nor alleges any dispute regarding it. Instead, Bascom alleges that Defendants do not include actually paid—not merely owed—bonuses or shift differentials in FLSA-required overtime calculations. So on its face, the Complaint does not call upon the court to interpret the CBA at all. And without interpretation of the CBA, LMRA preemption does not apply.

Accordingly, the opinion's LMRA decision is not a clear error nor a manifest injustice.

## ORDER

Defendant's Motion for Reconsideration[46] is DENIED.

Signed February 4, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[44] *See, e.g., Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301 (E.D.N.Y. 2011) (holding an FLSA claim was preempted by Section 301 where the Court first had to determine what the Plaintiff was owed under a CBA).
[45] *Moran*, 2025 WL 2783596, at *5; Order n.58.
[46] ECF No. 31.